# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JENNIFER RITTENHOUSE

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Rahul Munshi, Esquire Console Mattiacci Law, LLC
1525 Locust Street, 9th Floor Philadelphia PA, 19102
(215) 545-7676

## DEFENDANTS

GLAXOSMITHKLINE

County of Residence of First Listed Defendant   Durham
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
        THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government
     Plaintiff
- [ ] 2   U.S. Government
     Defendant
- [X] 3   Federal Question
     *(U.S. Government Not a Party)*
- [ ] 4   Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*      *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [X] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e, et seq.; 43 P.S. §951, et seq. ; 29 U.S.C. §621, et seq.
Brief description of cause:
Violations of Title VII, ADEA, and PHRA for age and/or sex discrimination.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
April 20, 2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _Harleysville, PA 19438_

Address of Defendant: _Five Moore Drive P.O. Box 13398 Research Triangle Park, NC 27709_

Place of Accident, Incident or Transaction: _Five Moore Drive P.O. Box 13398 Research Triangle Park, NC 27709_

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _April 20, 2021_  _____  _307548_
          Attorney-at-Law / Pro Se Plaintiff          Attorney I.D. # (if applicable)

---

**CIVIL: (Place a √ in one category only)**

**A.  Federal Question Cases:**

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    *(Please specify)* _____

**B.  Diversity Jurisdiction Cases:**

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify)* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    *(Please specify)* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _Rahul Munshi, Esquire_, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _April 20, 2021_  _____  _307548_
          Attorney-at-Law / Pro Se Plaintiff          Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| **JENNIFER RITTENHOUSE** | : | CIVIL ACTION |
| PLAINTIFF, | : | |
| **v.** | : | |
| **GLAXOSMITHKLINE** | : | |
| | : | NO. |
| DEFENDANTS. | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)   In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( X )

| | | |
|---|---|---|
| April 20, 2021 | _[signature]_ | Plaintiff, Jennifer Rittenhouse |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 545- 7676 | (215) 827- 5101 | munshi@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JENNIFER RITTENHOUSE** : | |
| **Harleysville, PA 19438** : | |
| : | |
| **Plaintiff,** : | |
| : | **CIVIL ACTION NO.** |
| **v.** : | |
| : | |
| **GLAXOSMITHKLINE** : | **JURY TRIAL DEMANDED** |
| **Five Moore Drive** : | |
| **P.O. Box 13398** : | |
| **Research Triangle Park, NC 27709** : | |
| : | |
| **Defendant.** : | |
| : | |

## COMPLAINT

### I.   INTRODUCTION

Plaintiff, Jennifer Rittenhouse, brings this action against her former employer, GlaxoSmithKline LLC ("GSK" or "Defendant"). Plaintiff, a long-tenured employee of Defendant, was notified of her termination of employment in October 2018 at the age of fifty-five (55). Plaintiff subsequently applied to several positions within GSK for which she was qualified, but GSK bypassed Plaintiff each time in favor of younger and/or male candidates who were less-qualified than Plaintiff. Further, as set forth below, GSK is engaged in systemic conduct to eliminate older workers from its workforce while promoting and retaining younger employees who the company deems to be of "high-potential."

Plaintiff was discriminated against because of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA") and because of her age in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621, *et seq.*

("ADEA") and the PHRA. Plaintiff seeks all damages, including economic loss, compensatory, liquidated, and punitive damages, and all other relief under applicable federal and state law as this Court deems appropriate.

## II.   PARTIES

1.      Plaintiff, Jennifer Rittenhouse, is a female individual and citizen of the Commonwealth of Pennsylvania.

2.      Plaintiff was fifty-five (55) years old at the time of her termination.

3.      Defendant GSK, a multi-national pharmaceuticals company, has its United States of America headquarters in North Carolina.

4.      Defendant is engaged in an industry affecting interstate commerce and regularly does business in Pennsylvania.

5.      At all times material hereto, Defendant employed more than twenty (20) individuals.

6.      At all times material hereto, Defendant has acted as an "employer" within the meaning of the statutes which form the basis of this matter.

7.      At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of the statutes which form the basis of this matter.

8.      At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's businesses.

## III.   JURISDICTION AND VENUE

9.      The causes of action which form the basis of this matter arise under Title VII, the ADEA, and the PHRA.

10.     The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

11.     The District Court has jurisdiction over Count II (ADEA) pursuant to 29 U.S.C. §626(c) and 28 U.S.C. §1331.

12.     The District Court has supplemental jurisdiction over Count III (PHRA) pursuant to 28 U.S.C. §1367.

13.     Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

14.     On or about January 28, 2019, Plaintiff filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC"), and dual-filed with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination alleged herein.  Attached hereto, incorporated herein and marked as Exhibit 1 is a true and correct copy of the PHRC/EEOC Complaint of Discrimination.

15.     On or about February 11, 2021, the EEOC issued to Plaintiff a Notice of Right to Sue.  Attached hereto, incorporated herein and marked as Exhibit 2 is a true and correct copy of that notice.

16.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

IV.     **FACTUAL ALLEGATIONS**

17.     Plaintiff was born in 1963.

18.     Plaintiff commenced employment with Defendant on or around December 13, 2010 as a Grade Level 6 District Sales Manager.

19.     Throughout her nearly eight-year tenure with Defendant, Plaintiff consistently

performed her job duties in a highly competent manner, and she consistently received positive feedback regarding her performance.

20.     Defendant promoted Plaintiff in 2015 to a Grade Level 5 District Sales Director position.

21.     Plaintiff held the position of District Sales Director until her termination in 2018. She worked primarily out of her home office in Pennsylvania.

22.     Prior to her termination, Plaintiff reported directly to Magdalene Pederson (33[1], female), Developmental Second Line Leader.

23.     Pederson reported to Paul Field (55, male), Area Vice President.

24.     Field reported to Debra Rutherford (50, female), Vice President, Eastern Section.

25.     Plaintiff began reporting to Pederson on or about May 1, 2018.

26.     Plaintiff reported directly to Pederson for less than six (6) months prior to the notice of her termination on or around October 4, 2018.

27.     Pederson had been a participant in GSK's Future Leaders Graduate Programme.

28.     GSK's Future Leaders Graduate Programme is an intensive development and training program for select employees of Defendant deemed by the company to be "high-value" and "high-potential."

29.     According to GSK's documentation, the purpose of the Future Leaders Graduate Programme is for younger employees to "develop," "explore [their] leadership potential through training, mentoring and on-the-job experience," and "improve their skills" within GSK.

30.     GSK markets its Future Leaders Graduate Programme to "graduate[s] with the talent and ambition to lead others," and states that it will "equip [participants] with the expertise [they] need" to succeed at GSK.

_____
[1] Ages contained herein are approximates.

31.    Plaintiff was never selected to participate in GSK's Future Leaders Graduate Programme.

32.    GSK's Future Leaders Graduate Programme intentionally discriminates against employees over the age of forty (40) and disparately impacts employees over the age of forty (40).

33.    Prior to her termination, Plaintiff was one (1) of the two (2) oldest employees, and the oldest female employee, directly reporting to Pederson and indirectly reporting to Field.

34.    Employees reporting to Pederson and Field at the time of Plaintiff's termination of employment at the age of fifty-five (55) from her position of District Sales Director included:

>    (1) Christina Marone (33, female) – District Sales Manager;
>
>    (2) Michael Emig (49, male) – District Sales Manager;
>
>    (3) George Tobar (51, male) – District Sales Manager;
>
>    (4) Jennifer Cefalo (38, female) – District Sales Director;
>
>    (5) Gail Griffith (43, female) – District Sales Director;
>
>    (6) Darrin Holland (45, male) – District Sales Director;
>
>    (7) Evelyn Malitas (48, female) – District Sales Director;
>
>    (8) Thomas Cionci (50, male) – District Sales Manager; and
>
>    (9) Fred Miller (55, male) – District Sales Director.

35.    On or around June 2, 2018 – approximately four (4) months before Plaintiff's notice of termination – GSK presented Plaintiff with a Regional First Line Leader Peer Recognition Award.

36.    On or around September 5, 2018, in a town hall meeting, GSK announced that organizational changes and a "rebalancing" would be coming.   GSK stated that manager

calibration ratings and other ratings would be taken into account when making decisions on the "rebalancing" within the company.

37.     On or about September 12, 2018, Defendant sent a preference survey to employees asking employees to voluntarily leave their employment with GSK.  Defendant required employees to respond with their preferences by September 19, 2018.

38.     GSK incentivized employees to leave their employment by offering a separation package that included a severance payment based on years of service.

39.     GSK targeted and provided financial incentives to older workers to leave the workforce.

40.     On or around September 18, 2018, Plaintiff rejected GSK's offer to voluntarily leave her employment in exchange for severance, and she elected to remain employed by Defendant.

41.     Approximately two (2) weeks later, on or around October 4, 2018, in a meeting with Pederson, GSK informed Plaintiff that her employment would be terminated, effective December 24, 2018.

42.     The stated reason for Plaintiff's termination was that she was not selected for a role for continued employment with GSK.

43.     GSK's stated reason for terminating Plaintiff's employment is a pretext for age and/or sex discrimination, or a combination of age/sex discrimination.

44.     GSK offered no explanation to Plaintiff as to why she was personally selected for termination while younger and/or male employees were retained.

45.     GSK retained less-qualified younger and/or male employees while terminating Plaintiff's employment.

46.    Upon information and belief, GSK assigned Plaintiff's job duties to Tobar (51, male), a District Sales Manager.

47.    Plaintiff was more qualified to perform her job duties than Tobar.

48.    By way of example, and without limitation, Plaintiff had performed her job duties and responsibilities for more years than Tobar had, she held a higher grade level, and she had positive manager calibration ratings.

49.    In contrast, Tobar had less than one (1) year of experience performing these job duties and responsibilities, held a lower grade level than Plaintiff, and he only had sales professional or internal (as opposed to manager calibration) ratings that had little to no bearing on the position he was awarded after Plaintiff's termination.

50.    Moreover, Tobar had only recently – in March 2018 – commenced his District Sales Manager role with Defendant.

51.    Plaintiff had no disciplinary or performance issues through her nearly eight-year tenure with GSK.

52.    GSK did not offer Plaintiff a different position for which she would be qualified.

53.    On or around October 16, 2018, Plaintiff emailed Jeff Hoch (46, male), Field Vice President, expressing her interest in the posted Developmental First Line Leader position.

54.    Hoch responded that the position Plaintiff sought was "a developmental role for those aspiring to be a [First Line Leader] with a small number of direct reports and would not be a position for people [allegedly such as Plaintiff] who have been in the role previously and have had considerable experience."

55.    Plaintiff understood Hoch's comments for why she would not be considered for this open position to be age-discriminatory.

56.     Plaintiff responded to Hoch, outlining how her experience would benefit GSK if she was selected for the Developmental First Line Leader position.

57.     Hoch did not respond to this email from Plaintiff.

58.     The following day, on or around October 17, 2018, Plaintiff applied for the posted Developmental First Line Leader position.

59.     Plaintiff was qualified for this position and had knowledge of the customers, sales professionals, and GSK's practices relevant to the job.

60.     GSK failed to interview Plaintiff for the Developmental First Line Leader position, and she received no response to her application.

61.     On or around November 1, 2018, Plaintiff learned that she had not been selected for the Developmental First Line Leader position.

62.     Instead of Plaintiff, GSK awarded the position to Resheeda Flournoy (39, female).

63.     Plaintiff was more qualified for the position of Developmental First Line Leader than Flournoy, who was substantially younger than Plaintiff.

64.     Upon information and belief, Flournoy had participated in GSK's Future Leaders Graduate Programme.

65.     GSK failed to select Plaintiff for the Developmental First Line Leader position – or even interview her – because of her age and/or because of a combination of her age and sex.

66.     Also on or around October 17, 2018, Plaintiff applied for a posted First Line Leader position.

67.     Plaintiff was qualified for this position.

68.     On or around October 25, 2018, Plaintiff interviewed with Pederson and Field for the First Line Leader position.

69.     On or around October 31, 2018, GSK informed Plaintiff that she was not selected for the First Line Leader position.

70.     GSK instead hired Fred Miller (55, male) for the First Line Leader position.

71.     Plaintiff was more qualified for the position than Miller.

72.     The stated reason for GSK's failure to hire Plaintiff into this position was that GSK allegedly needed someone who could bring an underperforming team up quickly.

73.     GSK's stated reason for failing to hire Plaintiff into the First Line Leader position is a pretext for sex discrimination and/or a combination of age and sex discrimination.

74.     GSK offered no explanation, including the selection criteria, as to why she was not selected for the position and why a male employee was awarded the job.

75.     On or around December 16, 2018, Field selected Thomas Cionci (50, male) for an open District Sales Manager position.

76.     Plaintiff was qualified for the District Sales Manager position.

77.     Plaintiff did not have an opportunity to apply for the position because it was not posted; if the position had been posted, Plaintiff would have applied for this position.

78.     GSK failed to select, or even interview, Plaintiff for the District Sales Manager position because of her sex and/or because of a combination of her age and sex.

79.     In connection with Plaintiff's termination, GSK provided to Plaintiff a list of employees pursuant to the Older Workers Benefit Protection Act ("OWBPA").

80.     The OWBPA list reveals that District Sales Director employees over the age of fifty (50) who did not join the voluntary layoff program and who did not express interest in demotion to a Sales Professional role had a 22% change of being terminated by GSK.

81.     In contrast, District Sales Directors under the age of fifty (50) who met the same

criteria had only a 13% chance of termination by GSK.

82.     GSK's conduct evidenced a bias against older workers and a preference for younger employees.

83.     Plaintiff's sex was a motivating and/or determinative factor in Defendant's discriminatory treatment of Plaintiff and in the termination of Plaintiff's employment.

84.     Plaintiff's age was a motivating and/or determinative factor in Defendant's discriminatory treatment of Plaintiff and in the termination of Plaintiff's employment.

85.     As a direct and proximate result of the discriminatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

86.     The conduct of Defendant, as set forth above, was outrageous under the circumstances, was done by and with the knowledge of upper management and warrants the imposition of punitive damages against Defendant.

87.      The conduct of Defendant, as set forth above, was willful and intentional.

### COUNT I (TITLE VII)

88.     Plaintiff incorporates herein by reference paragraphs 1 through 87 above, as if set forth herein in their entirety.

89.     By committing the foregoing acts of discrimination against Plaintiff on the basis of Plaintiff's sex, Defendant has violated Title VII.

90.     Said violations were willful and intentional and warrant the imposition of punitive damages.

91.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff

has suffered the damages and losses set forth herein.

92.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory acts unless and until this Court grants the relief requested herein.

93.     No previous application has been made for the relief requested herein.

## COUNT II (ADEA)

94.     Plaintiff incorporates herein by reference paragraphs 1 through 93 above, as if set forth herein in their entirety.

95.     By committing the foregoing acts of discrimination against Plaintiff, Defendant has violated the ADEA.

96.     Said violations were willful and warrant the imposition of liquidated damages.

97.     As a direct and proximate result of Defendant's violation of the ADEA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

98.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory acts unless and until this Court grants the relief requested herein.

99.     No previous application has been made for the relief requested herein.

## COUNT III (PHRA)

100.    Plaintiff incorporates herein by reference paragraphs 1 through 99 above, as if set forth herein in their entirety.

101.    Defendant, by committing the foregoing acts of discrimination, has violated the PHRA.

102.    As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff

has sustained the injuries, damages and losses set forth herein.

103.    Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

104.    No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff, Jennifer Rittenhouse, and against Defendant GSK.  Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)    declaring the acts and practices complained of herein to be in violation of Title VII;

(b)    declaring the acts and practices complained of herein to be in violation of the ADEA;

(d)    declaring the acts and practices complained of herein to be in violation of the PHRA;

(e)    enjoining and permanently restraining the violations alleged herein;

(f)    entering judgment against Defendant in favor of Plaintiff in an amount to be determined;

(g)    awarding compensatory damages to Plaintiff to make Plaintiff whole for all past and future lost earnings, benefits and earnings capacity which Plaintiff has suffered and will continue to suffer as a result of Defendant's discriminatory and unlawful misconduct;

(h)    awarding compensatory damages to Plaintiff for past and future emotional upset,

mental anguish, humiliation, loss of life's pleasures and pain and suffering, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(i)     awarding liquidated damages to Plaintiff under the ADEA;

(j)     awarding punitive damages to Plaintiff under Title VII;

(m)    awarding Plaintiff such other damages as are appropriate under Title VII, the ADEA, and the PHRA;

(n)     awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and,

(o)     granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

Dated: April 20, 2021                    By: _____

Rahul Munshi
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
munshi@consolelaw.com
215-545-7676
215-814-8920 (fax)

Attorneys for Plaintiff,
Jennifer Rittenhouse

# EXHIBIT 1

**Received**

**JAN 2 8 2019**

**PA Human Relations Commission**
**Philadelphia Regional Office**

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

COMPLAINANT:                     :
                                 :
**JENNIFER RITTENHOUSE**         :          Docket No.
                                 :
v.                               :
                                 :
RESPONDENT:                      :
                                 :
**GLAXOSMITHKLINE LLC**          :

1. The Complainant herein is:

   Name:              Jennifer Rittenhouse

   Address:           **REDACTED**

2. The Respondent herein is:

   Name:              GlaxoSmithKline LLC

   Address:           Five Moore Drive, P.O. Box 13398
                      Research Triangle Park, NC 27709

3. I, Jennifer Rittenhouse, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my age (55), my sex (female), and/or the combination of my age and

sex ("age/sex") as set forth below:

### Discrimination

#### A. I specifically allege:

[1]      I was hired by Respondent on or about December 13, 2010. I had

approximately eight (8) years of service at Respondent.

[2]        I consistently performed my job duties in a highly competent manner, and received positive feedback.

[3]        I worked out of my home office in Pennsylvania.

[4]        I last held the position of District Sales Director.

[5]        I last reported to Magdalene Pederson (32[1], female), Field Vice President, Sales.  Pederson reported to Paul Field (55, male), Area Vice President.  Field reported to Debra Rutherford (50, female), Vice President, Eastern Section.

[6]        On or about May 1, 2018, I began reporting to Pederson (32, female).

[7]        Pederson had participated in the Future Leaders Graduate Programme.

[8]        The Future Leaders Graduate Programme is an intensive development and training program for select high-value, high-potential employees at Respondent.  The purpose of the Future Leaders Graduate Programme is for younger employees to "develop," "explore [their] leadership potential through training, mentoring and on-the-job experience," and "improve [their] skills" within Respondent.  Respondent markets its Programme to "graduate[s] with the talent and ambition to lead others," and states that it will "equip [participants] with the expertise [they] need" to work at Respondent.  I have never been selected to participate in Respondent's Future Leaders Graduate Programme.

[9]        I was one (1) of the two (2) oldest employees, and the oldest female employee directly reporting to Pederson (32, female) and Field (55, male).

[10]        I was the only employee reporting to Pederson and Field who was terminated, effective December 24, 2018.

[11]        The following employees reported to Pederson and Field at the time of my termination: Christina Marrone (33, female), District Sales Manager; Jennifer Cefalo (38,

---

[1] All ages herein are approximations.

female), District Sales Director; Gail Griffith (43, female), District Sales Director; Darrin

Holland (45, male), District Sales Director; Evelyn Malitas (48, female), District Sales Director;

Michael Emig (49, male), District Sales Manager; Thomas Cionci (50, male), District Sales

Manager; George Tobar (52, male), District Sales Manager; Fred Miller (55, male), First Line

Leader; and me (55, female), District Sales Director.  I am more qualified to perform each of

these employees' positions.

[12]     On or about June 2, 2018, Respondent presented me with a Regional First

Line Leader Peer Recognition Award.

[13]     On September 5, 2018, in a town hall meeting, Respondent announced that

organizational changes and a "rebalancing" would be coming.  Respondent stated that manager

calibration ratings and other ratings would be taken into account.

[14]     On September 12, 2018, Respondent sent a preference survey to

employees asking employees to voluntarily leave their employment with Respondent.

Respondent required employees to respond with their preferences by September 19, 2018.

[15]     Respondent incentivized employees to leave their employment by offering

a severance package that included a severance payment based on years of service.

[16]     On or about September 18, 2018, I refused Respondent's offer to leave my

employment in exchange for severance, and elected to remain employed with Respondent.

[17]     On October 4, 2018, in a meeting with Pederson (32, female), Respondent

notified me that my employment would be terminated, effective December 24, 2018.  I was

blindsided.  Before the town hall meeting, I had no indication that my job was in jeopardy.  The

stated reason for my termination was that I was not selected for a role to continue my

employment with Respondent.

[18]     The documents that I received from Respondent stated that "[t]he factors that were considered in determining displacements may include: a) priority of projects, as determined by an analysis of business opportunity, need, and value; b) criticality of function and skills; c) geography and organizational structure; d) role elimination; and e) employee preference for displacement."

[19]     Respondent's stated reasons are pretext for age and/or sex and/or age/sex discrimination.

[20]     Respondent offered no explanation, including the selection criteria, as to why I was terminated and the younger and/or male employees were retained.

[21]     Respondent retained less qualified younger and/or male employees when I was terminated.

[22]     Respondent assigned my job duties to Tobar (52, male).  I am more qualified to perform my job duties than the younger, male employee who was retained and assigned my job duties.  As of March 15, 2018, Tobar (52, male) held a position that was two (2) grade levels beneath my grade level.  For example, and without limitation, I had performed my job duties and responsibilities for more years than Tobar (52, male) had, I held a higher grade level, and I had positive manager calibration ratings; Tobar (52, male) had less than one (1) year of performing these job duties and responsibilities, was at a lower grade level than I was, and only had sales professional or internal (and not manager calibration) ratings that had little to no bearing on this position.

[23]     I had no disciplinary or performance issues throughout my employment.

[24]     Respondent did not offer me a downgraded position or a position with reduced pay in lieu of termination.

[25]      On October 16, 2018, I emailed Jeff Hoch (46, male), Field Vice President, expressing my interest in the posted Developmental First Line Leader position.

[26]      On October 16, 2018, in an email response from Hoch (46, male), I was told that this position was "a developmental role for those aspiring to be a [First Line Leader] with a small number of direct reports and would not be a position for people who have been in the role previously and have had considerable experience." I understood these comments to be discriminatory based on age.

[27]      On October 16, 2018, I responded to Hoch (46, male), outlining how my experience would benefit Respondent if I were selected for the Developmental First Line Leader position.

[28]      I received no response to my email.

[29]      On October 17, 2018, I applied for the posted Developmental First Line Leader position. I was qualified for the position, and knew the customers, sales professionals, and Respondent's practices.

[30]      Respondent failed to interview me for the Developmental First Line Leader positon, and I received no response to my application.

[31]      On October 17, 2018, I applied for the posted First Line Leader position. I was qualified for the position.

[32]      On October 25, 2018, I interviewed with Pederson (32, female) and Field (55, male) for the First Line Leader position.

[33]      On October 31, 2018, Respondent failed to select me for the First Line Leader position. The stated reason was that Respondent needed someone who could bring an

underperforming team up quickly.  Instead of me, Respondent selected Miller (55, male).  I am more qualified for the position than the male employee who was selected for the position.

[34]     Respondent's stated reason is pretext.

[35]     Respondent failed to select me for the position because of my sex and/or age/sex.

[36]     Respondent offered no explanation, including the selection criteria, as to why I was not selected for the position and the male employee was selected.

[37]     On November 1, 2018, Respondent failed to select me for the Developmental First Line Leader position.  Respondent did not provide any explanation for failing to select me for the positon.  Instead of me, Respondent selected Resheeda Flournoy (26, female), who had little to no managerial experience.  I am more qualified for the position than the substantially younger employee who was selected for the position.  Flournoy had participated in the Future Leaders Graduate Programme.

[38]     Respondent failed to select me for the position, or even interview me, because of my age and/or age/sex.

[39]     Respondent offered no explanation, including the selection criteria, as to why I was not selected for the position and the substantially younger employee was selected.

[40]     On or about December 16, 2018, Field (55, male) selected Cionci (50, male) for a District Sales Manager position.  I was qualified for the position.  I had no opportunity to apply for the position because the position was not posted.  If it had been posted, I would have applied for the position.

[41]     Respondent failed to select me for the position, or even interview me, because of my sex and/or age/sex.

[42]        Respondent's OWBPA list that I was provided shows that District Sales Director employees over age fifty (50), who did not "express[] a preference not to be considered for a role in [Respondent] as part of this process" and who did not "express[] a preference, if not selected for a role in the Decisional Unit, to be considered for Sales Professional roles," had a twenty-two percent (22%) chance of being terminated, and that District Sales Director employees under age fifty (50) who did not "express[] a preference not to be considered for a role in [Respondent] as part of this process" and who did not "express[] a preference, if not selected for a role in the Decisional Unit, to be considered for Sales Professional roles," had a thirteen (13%) percent chance of being terminated.  District Sales Director employees over fifty (50) were almost twice as likely to be terminated as District Sales Director employees under age fifty (50).

[43]        Respondents provided me with an OWBPA list, of the job titles and ages of other employees who were terminated and retained at the same time I was terminated, that failed to comply with the OWBPA.

[44]        Respondent has a Future Leaders Graduate Programme, and provides development, training, and leadership opportunities to young employees.

[45]        The Future Leaders Graduate Programme intentionally discriminates against employees over age forty (40) and disparately impacts employees over age forty (40).

[46]        Respondent targets and provides financial incentives to older employees to leave the workforce.

[47]        Respondent's conduct evidences a bias against older employees and a preference for younger employees.

[48]     Respondent's age, sex, and age/sex discriminatory conduct has caused me emotional distress.

[49]     **I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondent who are age forty (40) and over, and who have been discriminated against based on age (including intentional age discrimination and disparate impact on older workers) in connection with hiring, promotion, position selection, training, leadership, development, and termination decisions.**

**B.**  Based on the aforementioned, I allege that Respondent has discriminated against me because of my age (55), my sex (female), and/or my age/sex in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 623 *et seq.* ("ADEA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.     The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

  **X**     **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):  (a)**

____     Section 5.1 Subsection(s) _____

____     Section 5.2 Subsection(s) _____

____     Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.      Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

    **X**     **This charge will be referred to the EEOC for the purpose of dual filing.**

6.      The Complainant prays that Respondent be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

(c) Remedy the discriminatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## **VERIFICATION**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

1/27/2019
(Date Signed)

(Signature)   Jennifer Rittenhouse

REDACTED

# EXHIBIT 2

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Jennifer Rittenhouse | From: | Philadelphia District Office |
|---|---|---|---|
| | **REDACTED** | | **801 Market Street** |
| | | | **Suite 1000** |
| | | | **Philadelphia, PA 19107** |

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **Kurt Jung** | |
| **17F-2020-60350** | **State, Local & Tribal Program Manager** | **(267) 589-9749** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jamie R. Williamson*                                **02/11/2021**

Enclosures(s)

**Jamie R. Williamson**
**District Director**                                *(Date Issued)*

cc:     **GLAXOSMITHKLINE LLC**

**Rahul Munshi, Esq.**                          **Kerry A. Shad, Esq.**
**Console Mattiacci Law**                      **Smith Anderson**
**1525 Locust Street, 9th Floor**            **150 Fayetteville Street, Suite 2300**
**Philadelphia, PA 19102**                    **Raleigh, NC 27601**
munshi@consolelaw.com                  kshad@smithlaw.com
buccieri@consolelaw.com

Enclosure with EEOC
Form 161-B (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***